**NATIONAL LAW CENTER ON HOMELESSNESS & POVERTY, et al., Plaintiffs,**

and

**National Union of the Homeless, et al., Intervenors,**

v.

**UNITED STATES VETERANS ADMINISTRATION, et al., Defendants.**

No. Civ.A. 88–2503(RCL).

United States District Court, District of Columbia.

April 27, 2000.

Phyllis D. Thompson, Lawrence S. Fox, Covington & Burling, Washington, DC, Maria Foscarinis, Washington, DC, for Plaintiffs.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Michael Sitcov, W. Scott Simpson, U.S. Department of Justice, Federal Programs Branch, Civil Div., Wash-

ington, DC (Richard Butterworth, Jr., Assistant General Counsel, General Services Admin., Washington, DC, Mark A. Duffy, Senior Regional Counsel, General Services Admin., Fort Worth, TX, of counsel), for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Plaintiff National Law Center on Homelessness and Poverty ("NLCHP") moves the court for a further order enforcing the court's permanent injunction to remedy subsequent alleged violations of Section 501 of the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. § 11411 ("McKinney Act" or "Act") by defendant General Services Administration ("GSA"). Specifically, plaintiff challenges the GSA's reliance on another statute, 40 U.S.C. § 345b [1] ("Section 345b"), to authorize the sale of certain federal properties to states and municipalities, without first complying with the McKinney Act. GSA maintains that property transferred under Section 345b, which authorizes the GSA to sell Federal buildings, "which have been supplanted by new structures," to States or political subdivisions thereof, does not constitute "excess" or "surplus" property under the McKinney Act, and therefore, the Act's requirements do not apply to such property. Alternatively, defendants contend that plaintiffs' motion should be barred by laches for their unreasonable delay in bringing it. Upon consideration of the plaintiffs' motion, the opposition thereto, the applicable law, and for the reasons set forth below, the court hereby GRANTS plaintiffs' motion and defendant is hereby ENJOINED from transferring federal property without first complying with the procedures set forth by the McKinney Act.

## I. BACKGROUND

In the original action, plaintiffs claimed that various governmental agencies were not satisfying their responsibilities under the McKinney Act, which seeks to transform "surplus" or "excess" federal government buildings into facilities for the homeless. The McKinney Act operates in conjunction with the Federal Property and Administrative Services Act of 1949 ("Property Act"), 40 U.S.C. § 484, which authorizes GSA to oversee the disposal of surplus property belonging to the federal government.

In December 1988, this court granted summary judgment and permanent injunctive relief for plaintiffs in this action, holding that the Department of Housing & Urban Development ("HUD") would be required to conduct more extensive "canvassing" of federal properties, to publish lists of "suitable" and available properties in the Federal Register, and to take such further steps as necessary to establish meaningful outreach programs for disposing of these federal properties. *See National Coalition for the Homeless v. U.S. Veterans Admin.*, No. 88–2503, 1988 WL 136958, * 7 (D.D.C. Dec.15, 1988). In addition, the court has been obliged to issue further orders enforcing its injunction on three prior occasions. *See National Law Center on Homelessness and Poverty v. United States Veterans Admin.*, 765 F.Supp. 1 (D.D.C.1991); *id.* at 13; *National Law Center on Homelessness and Poverty v. United States Veterans Admin.*, 819 F.Supp. 69 (D.D.C.1993). In its Order of April 21, 1993, the court retained jurisdiction to permit "any one of the parties to seek such further orders or directions as may be necessary or appropriate for the construction or carrying out of this Decree, ... [and] for the enforcement of compliance and punishment of violations thereof ..." Order of April 21, 1993, ¶ 17. A court's powers to enforce its own injunction by issuing additional orders is broad, *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S.Ct. 1267,

---

1. Originally enacted as Act of August 26, 1935, Pub.L. No. 74–330, 49 Stat. 800, amended by Act of July 7, 1960, Pub.L. No. 86–608, 74 Stat. 363.

28 L.Ed.2d 554 (1971), particularly where the enjoined party has not "fully complied with the court's earlier orders". *Hutto v. Finney,* 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

As noted above, the present controversy concerns plaintiffs' challenge to GSA's use of another statute, Section 345b, to avoid complying with the requirements of the McKinney Act. For example, in May 1997, GSA utilized Section 345b to sell a former federal courthouse in St. Louis, Missouri, without complying with the McKinney Act. *See* Declaration of Laurel D. Weir, February 16, 2000, ¶ 5 ("Weir Decl."), Exh. A to Plaintiffs' Motion for Further Order Enforcing Permanent Injunction. And, as is uncontested in the present action, GSA indicates that it intends to sell the former federal courthouse in Lafayette, Louisiana to the City–Parish of Lafayette using Section 345b as well. Weir Decl., ¶ 6.

■ To begin with, defendants argue that this court should not reach the merits of plaintiffs' motion because the equitable doctrine of laches bars plaintiffs' motion. That is, defendants assert that plaintiff waited silently for 8 months after learning of the proposed sale before filing this motion. The court finds defendants' laches argument to be without merit, as defendants are unable to demonstrate unreasonable delay. *Allen v. Card,* 799 F.Supp. 158, 165 (D.D.C.1992) (stating that to sustain the affirmative defense of laches, defendant must prove elements of unreasonable delay and undue prejudice and that neither element is sufficient on its own). As plaintiff explains, after having made initial objections to the sale in May 1999, it later was informed that the City–Parish of Lafayette did not have the proper funding to close the transaction. Weir Decl., ¶ 6. Accordingly, plaintiff took no further action on the matter. Subsequently, however, plaintiff learned in December 1999 that the sale was still pending, at which point plaintiff contacted GSA to inform them that plaintiff planned to challenge the sale. *Id.* Thus, the court finds that plaintiff did not unreasonably delay in bringing its motion and laches will not foreclose this court from reaching the merits.

■ With respect to the substance of the present dispute, defendants advance that the Lafayette courthouse, which has been replaced by a new courthouse, does not constitute "excess" property as that term in defined by the Property Act. Thus, rather than provide an end-run around the McKinney Act, defendants maintain that the McKinney Act requirements are never triggered. Instead, they contend that Section 345b involves a unique and limited authority that allows GSA to sell obsolete buildings to cities, counties and other political subdivisions, for public use, when the building is replaced by a new structure. Accordingly, to resolve the present dispute, the court must determine whether property transferred under Section 345b must first be reported as "excess" or "surplus" property under the Property Act and subject to the McKinney Act. Put simply, resolution of this issue depends upon whether the McKinney Act, as implemented by the Property Act, preempts Section 345b. As explained below, the court finds that it does.

## II. DISCUSSION

### A. The McKinney Act and The Federal Property and Administrative Services Act

By enacting the McKinney Act, Congress recognized that the federal government "has a clear responsibility and an existing capacity" to help meet an immediate and unprecedented crisis due to the lack of shelter for a growing number of individuals and families. 42 U.S.C. § 11301(a)(1) & (6). Thus, Section 501 of the Act, 42 U.S.C. § 11411, establishes a program whereby the Secretary of Housing and Urban Development ("HUD") identifies and publishes lists in the Federal Register of excess or surplus buildings and properties that are suitable for use to as-

sist the homeless. 42 U.S.C. § 14111(a)–(f).

To achieve its goal of assisting the homeless, the McKinney Act relies on certain federal property laws and their implementing regulations to identify excess or surplus properties not being used by the federal government. *See* 42 U.S.C. § 11411(a); 41 C.F.R. § 101–47.903(a) (1999). In particular, the McKinney Act operates in conjunction with the Federal Property and Administrative Services Act of 1949 ("Property Act"), 40 U.S.C. § 471 et seq., which requires, *inter alia,* federal landholding agencies to conduct surveys to determine whether property is excess, surplus, unutilized or underutilized. 40 U.S.C. § 483(b)(2); *see also* 40 U.S.C. § 472(e) (1994); 41 C.F.R. § 101–47.802(a) (1999); Exec. Order No. 12512 (April 29, 1995) (*reprinted in* 40 U.S.C. § 486 note (1994)); 41 C.F.R. § 101–47.802(b) (1999); Order of April 21, 1993, ¶ 1, 2.

The Property Act provides a comprehensive scheme for the disposal of surplus federal property. 40 U.S.C. § 471. And, to reinforce its broad scope, Congress expressly preempted any inconsistent federal law that might otherwise govern surplus federal property. Specifically, the Property Act provides that "[t]he authority conferred by this Act shall be in addition to and paramount to any authority conferred by any other law and shall not be subject to the provisions of any law inconsistent herewith...." 40 U.S.C. § 474(c).

To comply with the requirements of the Property Act regarding the disposal of surplus property, an agency must first determine whether any property under its control is "excess" to its own needs. 40 U.S.C. § 483(b)(2). "Excess property" is "any property under the control of *any Federal agency* which is not required *for its needs* and the discharge of *its responsibilities,* as determined by the head thereof." 40 U.S.C. § 472(e) (emphasis added). If it is, the Property Act requires the agency to make that property available to other federal agencies. 40 U.S.C.

§ 483(a). When no other federal agency needs the property, the Property Act declares such property to be "surplus." "Surplus property" is defined as "any property not required for the needs and the discharge of the responsibilities *of all federal agencies,* as determined by the Administrator." 40 U.S.C. § 472(g) (emphasis added). Once property is determined to be surplus, GSA may dispose of it. 40 U.S.C.A. § 484 (1994 & Supp.1999).

The McKinney Act, however, engrafts an important qualification on GSA's authority to dispose of surplus property by requiring HUD to give priority consideration to potential uses to assist the homeless. *See* 42 U.S.C. § 11411(f)(3)(A). Lists of such excess or surplus property identified as suitable to assist the homeless must then be published in the Federal Register, *id.* § 11411(c), and any person interested in using such identified property to aid the homeless may submit to the Department of Health and Human Services ("HHS") a notice of intent to apply, and later, an application for the property. *Id.* § 11411(d) & (e). Upon HHS' approval of an application for the excess or surplus property under the McKinney Act, GSA assigns the property to HHS for disposition to the successful applicant. *See id.* § 11411(d)(4)(B).

### B. *Section 345b*

In 1935, Congress authorized the agency responsible for managing federal buildings to transfer to units of state and local government, buildings that had been replaced by new structures, provided that the older properties remained in "public use" and the purchasing government entity paid at least half the value of the land. Pub.L. No. 330, ch. 684, 49 Stat. 800 (1935), *codified at* 40 U.S.C. § 345b ("Section 345b"). Section 345b provides, in relevant part,

[i]n order to suitably dispose of certain Federal buildings and the sites thereof under the control of the Administrator of General Services, which have been supplanted by new structures, and for

which the Administrator of General Services has determined there is no further Federal need, he is authorized, in his discretion, if he deems it to be in the best interests of the Government, to sell such buildings and sites or parts of sites to States, counties, municipalities, or other duly constituted political subdivisions of States for public use . . . .

40 U.S.C. § 345b. When Congress first enacted this statute, the Department of the Treasury was responsible for managing federal properties. Subsequently, this authority was transferred to the Federal Works Agency. Ultimately, in 1949, federal property management was transferred to the General Services Administration, where such authority remains to date. *See* Reorg. Plan No. 1 of 1939, § 301(a), 53 Stat. 1423, 1426 (1939); Pub.L. No. 152, ch. 288, § 103(a), 63 Stat. 377, 380 (1949).

Defendants rely on Section 345b for their authority to sell the old federal courthouse in Lafayette to the City–Parish of Lafayette. Specifically, defendants contend that GSA's authority to convey supplanted federal buildings to the States or their subdivisions for public use is separate and distinct from GSA's responsibilities under the Property Act. They maintain that property conveyed under Section 345b can never be considered "excess" or "surplus" property. Instead, defendants assert GSA, as the agency responsible for making appropriate transfers under § 345b, must carry out Congress's intent to "cooperat[e] with municipalities in their desire to acquire obsolete federal buildings for public use." S.Rep. No. 74–788, at 2 (1935). By enacting Section 345b, defendants maintain that Congress hoped to "encourage" municipalities to acquire obsolete federal buildings for the "public benefit," and that GSA is responsible for implementing this "liberal attitude." *Id.* at 1, 2. Thus, defendants argue, because property transferred under Section 345b is "required" for the "discharge" of GSA's "responsibilities" under that provision, it therefore does not constitute excess or

surplus property under the Property Act and is not subject to the McKinney Act. *See* 40 U.S.C. § 472(e) ("[E]xcess property means any property under the control of any Federal agency which is not required for its needs and the discharge of its responsibilities, as determined by the head thereof.") & § 472(g) ("[S]urplus property means any excess property not required for the needs and the discharge of the responsibilities of all Federal agencies, as determined by the Administrator.").

Moreover, as further evidence that Section 345b property is not subject to the Property Act, defendants point out that Congress repealed numerous statutes when it enacted the Property Act, and Section 345b was not among them. *See* Pub.L. No. 152, ch. 288, § 502(a), 63 Stat. At 399–401. And, with respect to the Property Act's extremely broad preemption provision, 40 U.S.C. § 474(c), which states that the authority conferred by the statute "shall be in addition to and paramount to any authority conferred by any other law," defendants contend that the purpose of this provision was to consolidate GSA's authority to manage federal property, not to undermine any preexisting authority held by GSA, such as Section 345b. Thus, defendants advance, Congress intended to retain Section 345b as a separate disposal authority independent of the Property Act.

While the court agrees that Section 345b remains in force and that it provides a property disposal authority in addition to that provided by the Property Act, the court finds that the plain terms of the Property Act's preemption provision foreclose the construction advanced by the defendants in this case. As previously noted, the Property Act includes a far-reaching preemption provision, which provides that

> "[t]he authority conferred by this Act shall be in addition to and paramount to any authority conferred by any other law and *shall not be subject to the provisions of any law inconsistent herewith . . . .* "

40 U.S.C. § 474(c) (emphasis added). Simply put, defendants' construction of this provision fails to provide any explanation as to how Section 345b, which authorizes federal agencies to dispose of properties *without* first reporting them to GSA as excess or surplus can be consistent with the Property Act, which expressly imposes such reporting requirements on federal agencies. Indeed, such provisions are completely at odds, as one act imposes requirements that the other does not. And, the fact that the scope of GSA's authority to circumvent the Property Act (and thus the McKinney Act) may be narrow, because it only applies to federal properties that have been replaced by new structures, is of no consequence.

Rather, the court finds that the plain terms of the Property Act dictate that property transferable under Section 345b is subject to the surveying and reporting requirements of the Property Act and the McKinney Act. Contrary to defendants' assertions, finding that Section 345b property is subject to the Property Act, and thereby the McKinney Act, does not necessarily foreclose GSA from transferring such properties to states or their subdivisions under Section 345b. Nor does it mean that such properties will ultimately be identified as "suitable" for assisting the homeless under the McKinney Act or applicable regulations. Rather, this interpretation merely gives effect to the far-reaching, comprehensive property management scheme set forth by Congress in plain terms in the Property Act. Thus, before selling a federal property to a State, city or other political subdivision under Section 345b, the federal agency in control of the property must comply with the Property Act.

## III. CONCLUSION

For the reasons set forth above, the court GRANTS plaintiffs' motion to further enforce the court's injunction and ENJOINS defendants from transferring property under Section 345b in circumvention of the McKinney Act.

A separate order shall issue this date.

### ORDER

Upon consideration of Plaintiffs' Motion for Further Order Enforcing the Court's Permanent Injunction of April 21, 1993, it is hereby

ORDERED that plaintiffs' motion [408–1] is GRANTED; and it is further

ORDERED that defendant General Services Administration comply with the court's April 21, 1993 injunction by taking the following actions:

1) Defendant General Services Administration shall immediately begin treating properties that it proposes to dispose of pursuant to 40 U.S.C. § 345b as "unused" or "underused" properties under Paragraph 2 of this court's April 21, 1993 Order.

2) Defendant General Services Administration shall immediately cease from disposing of any property pursuant to Section 345b until it has treated such property as "excess" or "surplus" property subject to all the requirements of the McKinney Act.

SO ORDERED.